**IN THE COURT OF APPEALS OF IOWA**

No. 19-0163
Filed June 5, 2019

**IN THE INTEREST OF E.W.,**
**Minor Child,**

**D.W., Father,**
　　Appellant.

_____

Appeal from the Iowa District Court for Page County, Amy L. Zacharias, Judge.

The father appeals the termination of his parental rights to his child. **AFFIRMED.**

C. Kenneth Whitacre, Glenwood, for appellant father.

Thomas J. Miller, Attorney General, and Meredith Lamberti, Assistant Attorney General, for appellee State.

Vicki R. Danley, Sidney, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., and Doyle and May, JJ.

**POTTERFIELD, Presiding Judge.**

The father appeals the termination of his parental rights to his child, E.W., born in 2017.[1]  The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (h) (2018).  The father only challenges the sufficiency of the evidence supporting the grounds for termination.[2]

We review termination proceedings de novo.  *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).  "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

We choose to consider paragraph (h).  It permits the juvenile court to terminate a parent's rights to their child if all of the following are established by clear and convincing evidence:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

---

[1] The mother's parental rights were also terminated; she does not appeal.

[2] The father mentions in passing that the State failed to make reasonable efforts to reunify him with E.W.  The father does not indicate how this claim was preserved for our review, and we have not found in the record where the father raised this issue to the juvenile court before the termination hearing.  *See In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) ("[T]he [parent] had the obligation to demand other, different or additional services prior to the termination hearing.  [The parent] did not demand services other than those provided, and for that reason, the issue of whether services were adequate has not been preserved for appellate review." (citations omitted)).  Additionally, the father does not articulate what additional services he believes he should have received nor explained how such services would affect his ability to parent E.W. safely.  *See In re S.B.*, No. 17-0221, 2017 WL 2184830, at *3 (Iowa Ct. App. May 17, 2017) (noting the parent "mention[ed] reasonable efforts" but did "not identify what services were lacking," and concluding the court could "grant her no relief").  We do not consider this issue further.

> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h). "At the present time" means at the time of the termination hearing. *See D.W.,* 791 N.W.2d at 707.

The father disputes only the final element—whether E.W. could be returned to his care at the time of the termination hearing in November 2018. The father seems to rely upon the fact that E.W.'s removal from his care was preceded by a voluntary out-of-home placement as evidence to show his parenting was never determined to be unsafe by the Iowa Department of Human Services (DHS) and, therefore, nothing prevented him from resuming care of E.W.

The father's argument ignores that E.W. was initially temporarily removed from both parents' care in October 2017 upon concerns regarding the mother's limited understanding of basic parenting skills, including failing to support E.W.'s head after being prompted and being unable to recognize when E.W. had a fever, and both parents' decision to allow known methamphetamine users to live in the home with the child present. E.W. was returned to the father's sole care in mid-October, but this was short-lived. In mid-November, the father voluntarily ceded care of E.W. to the child's paternal aunt and uncle when he allowed E.W.'s mother—whom DHS would not allow to live with E.W. and whose parental rights were terminated to two other children; one of whom she allegedly injured by throwing against a wall in anger—to live with him. DHS was not without concerns about the father's parenting at that time.

Though the mother moved out of the father's home in January 2018, the father agreed E.W. should continue living with the aunt and uncle. The placement became court-ordered in February 2018 after the father's therapist informed DHS the father had been "losing some time and not knowing how he arrived at places." Although the father was free to see E.W. whenever he wanted, he only saw the child twice in January. Additionally the family's service provider indicated concerns for the father's "lack of anticipatory guidance and basic knowledge regarding milestones and age appropriate expectations."

E.W. has reached new developmental milestones since the father initially agreed to put E.W. in the aunt and uncle's care, and DHS has had more of a chance to observe the father's parenting. As a result, new concerns regarding the father's ability to parent have arisen; he has not demonstrated he can be solely responsible for providing the care for a mobile toddler. The father requires prompting at visits to do both the necessary caretaking steps—checking and changing E.W.'s diaper or feeding him—and the preventative—stopping E.W. from crossing the street by himself. Despite the recommendation to do so, the father did not participate in any parenting classes during the pendency of this action. Additionally, the father does not have consistent housing to which E.W. could return. During the times the father had his own home, he allowed a number of people to move in with him—even some he did not know well. Similarly, the father's therapist expressed concerns regarding his "revolving door" of significant others. Based on the foregoing, we cannot say the father could have resumed caring for E.W. at the time of the termination hearing.

Because the father does not challenge the court's determinations pursuant to subsection 232.116(2) or (3), we do not consider those elements. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (stating the court "need not discuss" the steps of the analysis the parent did not dispute). We affirm.

**AFFIRMED.**